**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TED SHARPENTER, Individually and On Behalf of All Others Similarly Situated, </br></br> Plaintiff, </br></br> v. </br></br> NEWSTAR FINANCIAL, INC., CHARLES N. BRALVER, TIMOTHY J. CONWAY, BRADLEY E. COOPER, BRIAN L.P. FALLON, FRANK R. NOONAN, MAUREEN P. O'HARA, and RICHARD E. THORNBURGH, </br></br> Defendants. | Case No. 1:17-cv-12379 </br></br> JURY TRIAL DEMANDED </br></br> CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on October 17, 2017 (the "Proposed Transaction"), pursuant to which NewStar Financial, Inc. ("NewStar" or the "Company") will be acquired by affiliates of First Eagle Investment Management, LLC.[1]

2.  On October 16, 2017, NewStar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with First Eagle Holdings, Inc. ("Parent"), FE Holdco, LLC ("FE Holdco"), and FE Merger Sub, Inc. ("Merger Sub," and together with First Eagle, FE Holdco, and First Eagle

---

[1] An entity jointly owned by funds advised by The Blackstone Group L.P. ("Blackstone") and Corsair Capital LLC ("Corsair") is the majority owner of First Eagle.

Investment Management, LLC, "First Eagle"). Under the terms of the Merger Agreement, shareholders of NewStar will receive $11.44 per share in cash and one contractual contingent value right ("CVR").

3. On November 30, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement, which scheduled a stockholder vote on the Proposed Transaction for December 21, 2017, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of NewStar common stock.

9. Defendant NewStar is a Delaware corporation and maintains its principal executive offices at 500 Boylston Street, Suite 1250, Boston, MA 02116. NewStar's common stock is traded on the Nasdaq GS under the ticker symbol "NEWS."

10. Defendant Charles N. Bralver ("Bralver") has been a director of the Company since 2009.

11. Defendant Timothy J. Conway ("Conway") has served as a director, President, and Chief Executive Officer ("CEO") of NewStar since June 2004, and as Chairman of the Board of NewStar since September 2006.

12. Defendant Bradley E. Cooper ("Cooper") is a director of the Company.

13. Defendant Brian L.P. Fallon ("Fallon") is a director of the Company.

14. Defendant Frank R. Noonan ("Noonan") is a director of the Company.

15. Defendant Maureen P. O'Hara ("O'Hara") is a director of the Company.

16. Defendant Richard E. Thornburgh ("Thornburgh") is a director of the Company. Thornburgh is Vice Chairman of Corsair Investments LLC. He joined Corsair as a partner in 2006. He also currently serves on the board of directors of Credit Suisse.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of NewStar (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of October 13, 2017, there were approximately 41,480,754 shares of Company common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

25. NewStar is an internally-managed, commercial finance company with $7.3 billion

of assets managed across two complementary business lines: middle market direct lending and asset management.

26.     The Company's direct lending activities are focused on meeting the complex financing needs of companies and private investors in the middle markets through specialized lending groups that offer a range of flexible debt financing options.

27.     Credit investments are originated directly through teams of experienced, senior bankers and marketing officers organized around key industry and market segments.

28.     Through its asset management platforms, NewStar offers a range of investment products employing credit-oriented strategies focused on middle market loans and liquid, tradeable credit.

29.     The Company manages approximately $2.0 billion of assets in a series of private credit funds that co-invest in middle market loans originated through its established leveraged finance lending platform.

30.     Through its wholly-owned subsidiary, the Company also has more than $2 billion of assets managed across a series of CLOs that invest primarily in broadly syndicated, non-investment grade loans, as well as other sponsored funds and managed accounts that invest across various asset classes, including non-investment grade loans and bonds.

31.     On October 16, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which NewStar will be acquired by First Eagle.[2]

32.     Under the terms of the Merger Agreement, shareholders of NewStar will receive

---

[2] The Company also entered into an Asset Purchase Agreement with GSO Diamond Portfolio Holdco LLC ("GSO"), dated as of October 16, 2017, pursuant to which, immediately prior to the merger, the Company will sell a portfolio of investment assets, including loans and other credit investments, to GSO.

$11.44 per share in cash and one CVR.

33. Despite a limited "go-shop period," the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals.

34. Further, the Company must promptly advise First Eagle of any proposals or inquiries received from other parties.

35. The Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants First Eagle a "matching right" with respect to any "Superior Proposal" made to the Company.

36. Further locking up control of the Company in favor of First Eagle, the Merger Agreement provides for a "termination fee" payable by the Company to First Eagle if the Individual Defendants cause the Company to terminate the Merger Agreement.

37. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

38. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

39. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

40. The Proxy Statement omits material information regarding the background of the

Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

41.     For example, the Proxy Statement fails to disclose whether any nondisclosure agreements executed by NewStar and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

42.     The Proxy Statement fails to disclose the Board's basis for engaging Houlihan Lokey as a second financial advisor on September 22, 2017, after working with Credit Suisse as the Company's financial advisor since at least 2013.

43.     The Proxy Statement also fails to disclose the terms and values of the indications of interest received by NewStar by the "large, foreign-based bank and [the] non-bank commercial lender."

44.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Transactions"; and (ii) "Reasons for the Transactions; Recommendation of NewStar's Board of Directors."

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to NewStar's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NewStar

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. NewStar is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff

and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of NewStar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of NewStar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: December 4, 2017 | **MATORIN LAW OFFICE, LLC** |
| | By: */s/ Mitchell J. Matorin* |
| **OF COUNSEL:** | Mitchell J. Matorin (BBO# 649304) |
| | 18 Grove Street, Suite 5 |
| **RIGRODSKY & LONG, P.A.** | Wellesley, MA 02482 |
| 2 Righter Parkway, Suite 120 | (781) 453-0100 |
| Wilmington, DE 19803 | mmatorin@matorinlaw.com |
| Telephone: (302) 295-5310 | |
| Facsimile: (302) 654-7530 | *Local Counsel for Plaintiff* |
| | |
| **RM LAW, P.C.** | |
| 1055 Westlakes Drive, Suite 300 | |
| Berwyn, PA 19312 | |
| (484) 324-6800 | |
| | |
| *Attorneys for Plaintiff* | |